**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| STATE AND COUNTY MUTUAL FIRE INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-03-4972 |
| | § | |
| | § | |
| S.A. TRANSPORT COMPANY d/b/a SATCO, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This insurance coverage declaratory judgment action, which is administratively closed pending the conclusion of a related state court litigation, is before the Court on Plaintiff State and County Mutual Fire Insurance Company's Motion to Reopen the Case, to Lift the Stay and to Reconsider and Grant the Motion for Summary Judgment of State and County Mutual Fire Insurance Company" [Doc. # 33] ("SCMFIC's Motion"). Defendant S.A. Transport Company, d/b/a SATCO, has filed a response in opposition [Doc. # 34] and SCMFIC has filed a reply [Doc. # 35]. Based on a

careful review of the full record in this case and the governing legal authorities, the Court concludes that SCMFIC's Motion must be denied.

## I. BACKGROUND

By Memorandum and Order dated December 9, 2004 [Doc. # 31] (the "December 9 ruling"), the Court held that SCMFIC had a duty to defend SATCO in litigation captioned *Rebecca Gonzalez Davila and Jesus Suarez Garza v. H and M Construction Co., et al.*, Cause No. 2003-30139, pending in the 157th Judicial District Court of Harris County, Texas (the "state court case") under a SCMFIC commercial auto policy (the "Policy").[1] That ruling is incorporated herein by reference to the extent still relevant.

In the state court case, Davila and Garza (collectively, "state court plaintiffs") sued SATCO and others for claims arising from the accidental death of Ricardo G. Suarez ("Suarez") in the course of his work on March 4, 2002. The Court based its December 9 ruling on the state court plaintiffs' then operative pleading, the Second Amended Petition. The state court plaintiffs have since filed their Fourth Amended Original Petition (the "Fourth Amended Petition").[2] SCMFIC contends that the factual allegations in paragraph 20 of the Fourth Amended Petition establish that SCMFIC has

---

[1] SCMFIC's Commercial Auto Policy No. TRK 000 1056, for June 1, 2001 to June 1, 2002, Exhibit A to SCMFIC's Motion for Summary Judgment [Doc. # 20].

[2] Exhibit A to SCMFIC's Motion.

no duty to defend SATCO because Suarez was "in fact operating as an employee of Defendant [SATCO]." This contention is unpersuasive. SCMFIC has not met its summary judgment burden to show an exclusion from its insurance policy covering SATCO applies in the state court case.

## II. <u>LEGAL STANDARDS</u>

### A. <u>Summary Judgment Standards</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). An issue is material if its resolution could affect the

outcome of the action. *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).

**B. <u>Insurance Contract Principles</u>**

Interpretation of an insurance policy is a question of law. *Data Specialties, Inc. v. Transcon. Ins. Co.*, 125 F.3d 909, 911 (5th Cir. 1997); *Guaranty Nat'l Ins. Co. v. N. River Ins. Co.*, 909 F.2d 133, 135 (5th Cir. 1990). "[I]f the insurance contract is expressed in plain and unambiguous language, a court cannot resort to the various rules of construction." *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987).

"The insured bears the burden of showing that the claim against [it] is potentially within the policy's coverage." *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). The insurer, on the other hand, bears the burden of showing that a policy limitation or exclusion constitutes an affirmative defense to or avoidance

of coverage. TEX. INS. CODE ANN. art. 21.58 (Vernon 1980); *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1199 (5th Cir. 1993); *Sentry Ins. v. R. J. Weber Co.*, 2 F.3d 554, 556 (5th Cir. 1993).

In determining an insurer's duty to defend an insured against third-party claims under Texas law, the Court applies the "eight corners rule," which dictates that the Court "'look only to the pleadings and the insurance policy to determine whether the duty to defend exists.'" *Nautilus Ins. Co. v. Zamora*, 114 F.3d 536, 538 (5th Cir. 1997) (quoting *Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 255 (Tex. App.—Dallas 1993, writ denied)); *see also Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001) (citing *Nat'l Union Fire Ins. Co. v. Merch. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)).

The duty to defend is determined by "consulting the latest amended pleading." *Northfield Ins. Co. v. Loving Home Care*, 363 F.3d 523, 528 (5th Cir. 2004) (citing *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996)). Phrased another way, under the "eight corners rule," the duty to defend arises if the complaint, taken as true and construed broadly, asserts a claim within policy terms. *Travelers Ins. Co.*, 92 F.3d at 338; *Merch. Fast Motor Lines*, 939 S.W.2d at 141. If the petition alleges only facts that are excluded by the policy terms, there is no

duty to defend. *Northfield*, 363 F.3d at 528. Courts must liberally construe the allegations of the pleadings, and any doubt concerning coverage is resolved in favor of the insured. *King*, 85 S.W.3d at 187; *see also Merch. Fast Motor Lines*, 939 S.W.2d at 141 (courts give allegations in petition liberal construction).

It is the facts, not the legal theories, alleged that determine the existence of a duty to defend. "Texas courts do not look to conclusory assertions of a cause of action in determining a duty to defend. Instead, they look to see if the facts giving rise to the alleged actionable conduct, as stated within the eight corners of the [pleadings and policy] constitute a claim potentially within the insurance coverage." *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 85 (5th Cir. 1997) (citing *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673 (Tex. App.—Houston [14th Dist.] 1993, writ denied)). In other words, "[i]n reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Merch. Fast Motor Lines*, 939 S.W.2d at 141.

## III. DISCUSSION

The coverage issue at hand turns on whether Suarez was an "employee" of SATCO at the time of his fatal accident. SCMFIC contends that because the Fourth Amended Petition alleges unequivocally that Suarez was an "employee" of SATCO on

the day of the accident, the Employee Exclusion[3] in the Policy applies and, contrary to the circumstances raised by the Second Amended Petition, there no longer is any duty to defend SATCO in the state court case. The Court is unpersuaded that SCMFIC has

---

[3] The "Employee Exclusion," Section II.B, ¶ 4 of the Policy, provides:

> 4. EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY
>
> [This Policy excludes] Bodily injury to:
>
> a. An employee of the insured arising out of and in the course of employment by the insured; or
>
> b. The spouse, child, parent, brother or sister of that employee as a consequence of paragraph a. above.
>
> This exclusion applies:
>
> (1) Whether the insured may be liable as an employer or in any other capacity; and
>
> (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
>
> But this exclusion does not apply to bodily injury to domestic employees not entitled to workers compensation benefits or to liability assumed by the insured under an insured contract.

The Policy coverage provision, which is not here in issue, states:

> A. COVERAGE
>
> We will pay all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto. . . .

*Id.*, Section II.A.

met its burden at this summary judgment stage to demonstrate that the Employee Exclusion definitively applies.

According to allegations in the Fourth Amended Petition, SATCO is a company that specializes in transporting concrete construction products. Suarez generally worked as a driver for SATCO pursuant to an "Independent Owner-Operator Agreement."[4] H & M Construction Company, Inc. was the general contractor on a construction project at M.D. Anderson Cancer Center, and hired SATCO to transport concrete steps for a parking garage from San Antonio to the job site in Houston.[5] H & M Construction subcontracted with Manufactured Concrete, Ltd. (d/b/a MANCO) for labor, materials tools, equipment, supervision, and other things "required for a complete erection of a precast (concrete) parking garage at [MANCO's] San Antonio location, but subcontracted the erection of the precast garage to Defendant [International Structures, Inc. ("ISI")]."[6] Prior to the date of the accident, March 4, 2002, SATCO had dispatched Suarez, as well as other independent owner-operators, to deliver one or more loads of the material to Houston.[7]

---

4 Plaintiff's Fourth Amended Original Petition, Exhibit A to SCMFIC's Motion [Doc. # 33], ¶ 11. *See also infra* note 15.

5 *Id.*, ¶ 10.

6 *Id.*

7 *See id.* It did so apparently under an oral agreement with MANCO. *Id.*

The state court plaintiffs also allege that "SATCO would occasionally employ Mr. Suarez as a 'jockey,' whereby Mr. Suarez would remain at job sites and take working orders directly from SATCO's customers" and in such circumstances, Mr. Suarez would be compensated "on an hourly basis for his services."[8] This was the situation on the day of the accident.[9] The state court plaintiffs now allege (contrary to their allegations in the Second Amended Petition) that Suarez was "in fact operating as an employee of Defendant [SATCO] at the time he was killed."[10]

Under Texas law, "the test to determine whether a worker is an employee rather than an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the work." *Limestone Prods. Dist., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002) (citing *Thompson v. Travelers Indem. Co.*, 789 S.W.2d 277, 278 (Tex. 1990); *Farrell v. Greater Houston Transp. Co.*, 908 S.W.2d 1, 3 (Tex. App.—Houston [1st Dist.] 1995, writ denied)). The requisite right

---

8 *Id.,* ¶ 11.

9 *Id.*

10 *Id.*, ¶ 20; *see id.*, ¶ 13 ("On March 4, 2002, Mr. Suarez was working as a 'jockey' at the jobsite on behalf of SATCO when a set of concrete steps . . . crushed Mr. Suarez . . . ."); *id.*, ¶ 21 ("At the time Mr. Suarez was killed, Mr. Suarez was acting within the course and scope of his employment with SATCO and SATCO's negligence (either independently or in concert with another Defendant's negligence) proximately caused the injuries and resulting death of Mr. Suarez. As Mr. Suarez's employer, SATCO had a special relationship with Mr. Suarez. . . . Therefore, SATCO placed [Mr. Suarez] in a position whereby he was forced to jockey all loads, whether secure or not.").

to control is evaluated according to the following factors: "(1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job." *Id.* (citing *Pitchfork Land & Cattle Co. v. King*, 346 S.W.2d 598, 603 (1961); *Farrell*, 908 S.W.2d at 3). An independent contractor, in contrast, is a worker who "in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control and all its details." *Consumers County Mutual Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 364 n.3 (5th Cir. 2002) (applying Texas law) (internal citation and quotation omitted).

The only fact alleged by the state court plaintiffs to support their characterization is that Suarez earned an hourly wage from SATCO. Other allegations addressing other pertinent factors suggest a different relationship. The characterization in the Fourth Amended Petition of Suarez as a SATCO "employee" is a conclusory legal assertion, which remains to be proven. The Court must credit ***all*** the allegations in the operative complaint in the state court case. *See, Travelers Ins. Co.*, 92 F.3d at 338; *King*, 85 S.W.3d at 187; *Nat'l Union*, 939 S.W.2d at 141. Any doubt concerning coverage is

resolved in favor of the insured. *King*, 85 S.W.3d at 187; *see also Nat'l Union*, 939 S.W.2d at 141 (courts give allegations in petition liberal construction).

Notwithstanding their primary theory against SATCO that Suarez was a SATCO employee, the state court plaintiffs do not limit themselves to that single position. The state court plaintiffs also allege that Suarez was to "take working orders directly from SATCO's customers" at the job sites,[11] and "at the time of his death, Mr. Suarez's actions were being controlled by SATCO's customers," specifically, MANCO and ISI.[12] The state court plaintiffs allege in various places in the Fourth Amended Petition that Suarez took direction from others, not SATCO. For example, the state court plaintiffs state:

> H & M Constr[u]ction Company had the right to control [Suarez]. [Suarez] simply reported for duty at said premises and H & M Constr[u]ction (either independently or collectively with other defendants) controlled the conduct of [Suarez] by instructing when and where [Suarez] was to unload his cargo. But for H & M Constr[u]ction's control and instruction, [Suarez] would not be allowed to remain at said premises and would not know what task to carry out. Additionally, H & M Constr[u]ction and [Suarez] had a special relationship since H & M Constr[u]ction Company hired [Suarez] as an independent contractor.[13]

---

[11] *Id.*, ¶ 11.

[12] *Id.*, ¶ 20. The state court plaintiffs also make the conclusory (not factual) allegation: "In the event that it is determined [Suarez] was in fact working as an independent contractor for SATCO at the time he was killed, it will also be shown that a special relationship existed between [Suarez] and SATCO as a result of their hirer-independent contractor relationship. Under such a relationship, SATCO owed a legal duty to [Suarez]." *Id.*, ¶ 22.

[13] *Id.*, ¶ 17.

Further, the state court plaintiffs allege in their negligence claim against ISI that:

> ISI was one of the parties who had the right to control Mr. Suarez. Mr. Suarez simply reported for duty at said premises and ISI (either independently or collectively with other defendants) controlled the conduct of [Mr. Suarez] by instructing when and where [he] was to unload his cargo. But for ISI's control and instruction, [Mr. Suarez] would not be allowed to remain at said premises and would not know what task to carry out. Despite ISI's clear duty to Mr. Suarez, ISI breached their [*sic*] duty by failing to war[n] Mr. Suarez of the dangerous conditions present on the jobsite whereby [he] was expected to carry out his tasks.[14]

SCMFIC thus fails to show that the state court jury could not validly reject the state court plaintiffs' primary contention in the Fourth Amended Petition that Suarez was a SATCO "employee," a position based largely on the allegation that SATCO paid him an hourly wage, and rely instead on the state court plaintiffs' factual allegations that Suarez took direction from others besides SATCO thereby making him an independent contractor as to SATCO on the day of the accident.[15] The allegations in the Fourth Amended Petition therefore create a genuine issue of material fact about whether Suarez was an employee of SATCO or an independent contractor (at least as to SATCO) at the time of the accident that caused his death. The Fourth Amended Petition does not allege merely facts under which coverage is excluded by the policy

---

[14] *Id.*, ¶ 19.

[15] Mr. Suarez's formal contract with SATCO was an "Independent Owner-Operator Agreement," which likely was a trucking contract.

terms. *See Northfield*, 363 F.3d at 528. SCMFIC accordingly has not met its summary judgment burden to demonstrate that the Employee Exclusion definitively applies.

## IV. CONCLUSION AND ORDER

The factual allegations in the Fourth Amended Petition in the state court suit leave open the possibility that Suarez could be found to have been at the time of the accident something other than an employee of SATCO. SCMFIC continues to have a duty to defend SATCO in the state court case. It is therefore

**ORDERED** that State and County Mutual Fire Insurance Company's Motion to Reopen the Case, to Lift the Stay and to Reconsider and Grant the Motion for Summary Judgment of State and County Mutual Fire Insurance Company" [Doc. # 33] is **DENIED**. It is further

**ORDERED** that this case remains **STAYED AND ADMINISTRATIVELY CLOSED** pending resolution of the underlying lawsuit or notification from the parties that they have otherwise resolved their dispute regarding SCMFIC's indemnity obligation for any damages resulting from the underlying lawsuit.

SIGNED at Houston, Texas this **19th** day of **January 2006.**

Nancy F. Atlas
United States District Judge